## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

KARL E. TURNER,

                Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

                Defendant.

Case No. 15-CV-40-CVE-FHM

### REPORT AND RECOMMENDATION

Plaintiff, Karl E. Turner, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1]  The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

### Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1]  Plaintiff's September 27, 2011, application for disability benefits was denied initially and on reconsideration.  A hearing before Administrative Law Judge ("ALJ") Jeffrey S. Wolfe was held February 25, 2013.  By decision dated April 9, 2013, the ALJ entered the findings that are the subject of this appeal.  The Appeals Council denied Plaintiff's request for review on November 26, 2014.  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 48 years old on the alleged onset of disability date and 50 on the date of the ALJ's denial decision.  He has a 9th grade education and formerly worked as a metal mechanic/fabricator.  He claims to have been unable to work since January 1, 2010, as a result of hypertension, rectal bleeding caused by internal hemorrhoids, inability to walk, inability to lift, obesity, and hepatitis.

## The ALJ's Decision

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Although Plaintiff is unable to perform his past relevant work, based on the testimony of a vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations.  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

2

**Plaintiff's Allegations**

Plaintiff asserts that the ALJ's RFC is unsupported by substantial evidence of the record as a whole,[2] the credibility determination is unsupported by substantial evidence, and the Commissioner failed to sustain her burden at step five.

**Analysis**

For ease of analysis and discussion the undersigned has grouped Plaintiff's arguments into categories that relate to the topics discussed.

Medical Opinions

Plaintiff argues that the ALJ erred in relying on the opinions of the state Disability Determination Service (DDS) medical consultants[3] who reviewed Plaintiff's medical records and opined that he could perform light work.  [R. 360, 366, 381].  The ALJ stated he gave great weight to these opinions.  [R. 23].  The ALJ found that the opinions are consistent with the evidence of record at Exhibits 1F-14F.  [R. 24].  Plaintiff argues that the opinions were not entitled to great weight because they were rendered before Plaintiff's most recent medical records which Plaintiff points out show his bleeding worsened with 10-15 bowel

---

[2] Plaintiff raises a number of disparate issues under the overly broad topic heading: "The ALJ's RFC Is Unsupported By The Substantial Evidence Of The Record As A Whole."  [Dkt. 11, pp. 2-6].  Plaintiff's topic heading does not comply with the instructions contained in the Scheduling Order.  Further, some of the issues do not address the question of substantial evidence, but question whether the ALJ correctly applied the applicable legal standards.  These are different inquiries.

Plaintiff's counsel is strongly encouraged to clearly focus arguments as directed in the Scheduling Order:

> Plaintiff must list and number each specific error the Commissioner or the ALJ made in concluding that Plaintiff was not disabled.

[Dkt. 7].  [emphasis supplied].

[3] Although the ALJ is not bound by the findings made by State agency medical or psychological consultants, the regulations instruct that these consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation" whose findings must be considered as opinion evidence.  20 C.F.R. § 404.1527(e)(2)(i); 20 C.F.R. § 416.927(e)(2)(i).

movements a day, abdominal pain and cramping, positive occult blood stool samples, abnormal lab results, and an emergency room visit for abdominal pain. [R. 384, 385, 402, 403].

Although the DDS consultants did not review the later records, in finding that the opinions are supported by the record, the ALJ cited to the later records to which Plaintiff referred. In fact, Exhibits 1F-14F cited by the ALJ includes all but one medical record exhibit. That exhibit, Exhibit 15, contains the record of a follow-up appointment with Plaintiff's treating physician 2-3 weeks after an emergency room visit for abdominal pain. There it is noted that the abdominal pain is described as intermittent and further notes the absence of diarrhea. [R. 451]. Exhibit 15F also contains a lab report dated the date of the emergency room visit and a CT scan report which is also found in Exhibit 14F. [R. 412-13, 456-57]. The ALJ's decision thus demonstrates that all of the medical evidence was considered in making the RFC finding.

The undersigned notes there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); see also 20 C.F.R. §§ 404.1546(c) and 416.946(c). The Tenth Circuit has thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949; see, e.g ., *Wall v. Astrue,* 561 F.3d 1048, 1068–69 (10th Cir. 2009)(upholding ALJ's

findings on mental impairment where record did not contain any treating or examining medical opinions as to allegedly disabling pain disorder); *Bernal v. Bowen*, 851 F.2d 297, 302–03 (10th Cir.1988) (holding ALJ properly made mental RFC findings without expert medical assistance).  Since the ALJ was not required to have a medical opinion that directly corresponds to the RFC, the mere fact that he gave weight to medical opinions that were generated without consideration of all of the medical evidence does not, of itself, constitute error.

Aside from the January 3, 2012, opinion by Plaintiff's treating physician, Kimberly Asklock, D.O., [R. 311], none of the records cited by Plaintiff, and indeed none of the medical records suggest the existence of functional limitations that would preclude light work.  In addition, contrary to Plaintiff's assertion, the medical records generated after the DDS opinions were issued do not support his claim that he regularly had 10-15 bowel movements a day.[4]  The undersigned finds that the ALJ did not err in giving the DDS opinions great weight.[5]

---

[4]  The record from February 23, 2012, the date of the earliest DDS opinion to the date of the ALJ's decision, April 9, 2013, covers several doctor visits.  On May 21, 2012, Plaintiff complained of blood in his stool and 10-15 bowel movements a day.  [R. 384].  On July 23, 2012, Plaintiff saw his treating physician, Kimberly A. Ashlock, D.O., for rectal bleeding of two months duration, diffuse mild abdominal pain–worse in mornings, and no real diarrhea.  [R. 389].  Thereafter Plaintiff was seen by Dr. Ashlock on October 11, 2012 for allergies, and on December 12, 2012 for cough and congestion.  There were no notations of abdominal pain, an inordinate number of bowel movements, or bloody stools on those notes.  [R. 392-397].  On February 16, 2013, Plaintiff was seen in the Southcrest Hospital emergency room, with complaints of rectal bleeding, abdominal pain, and diarrhea.  [R. 401].  On March 11, 2013, Plaintiff had a follow-up appointment with Dr. Ashlock who recorded abdominal pain and bloody stools started 2-3 months ago and noted no diarrhea or constipation.  [R. 451].

[5]  Plaintiff mentioned that one of the DDS consultants, Katherine Sheirman, M.D., is no longer a practicing physician and provided a reference to a website to confirm that fact.  [Dkt. 11, p. 3].  Plaintiff's purpose in providing this information is unclear.  The information gleaned from the website, that Dr. Sheirman is 65 years old and no longer practicing, has no effect on the merits of her opinion.

Dr. Asklock submitted a letter dated January 2, 2012, the content of which follows:

> KARL TURNER has applied for Social Security disability.
>
> The claimant's ability to do work-related activities such as walking distances farther than 1 block and lifting heavy objects is impaired.
>
> If I can be of further assistance please do not hesitate to contact me.

[R. 311]. (capitalization in original). The ALJ noted that Dr. Ashlock had treated Plaintiff since September 15, 2009. The ALJ afforded some weight to Dr. Ashlock's statement and limited Plaintiff to occasionally lifting and carrying 20 pounds. However, the ALJ found that the walking limitation was not supported by Dr. Asklock's records noting there is nothing in the record to support the opinion that Plaintiff could not walk farther than one block. The ALJ noted that on January 3, 2012 (the same day the opinion was authored), Plaintiff admitted he could still walk, sit, and stand. [R. 22]. Dr. Ashlock's progress notes on January 3, 2012, state:

> **Subjective**: here for recheck on his HTN, BP was controlled till he ran out of meds, no CP or SOB, no palpitations or abnormal heart rate, no dizziness or syncope, no extremity edema; no HA's smoker; also requesting I fill out disability paperwork, says that ever since he underwent Interferon tx for Hep C he gets abdominal pain when he lifts heavy objects, can still walk, sit, stand, handle objects, talk, reason, focus[.]

[R. 312].

An ALJ is required to give controlling weight to a treating physician's opinion if the opinion is both: (1) well supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) consistent with other substantial evidence in the record. *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004). If the ALJ rejects the opinion

6

completely, specific legitimate reasons must be given for doing so.  *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996), *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).  The undersigned finds that the ALJ gave specific legitimate reasons for rejecting Dr. Ashlock's opinion about Plaintiff's inability to walk.  There is no merit to Plaintiff's arguments to the contrary.[6]

## Development of the Record

Plaintiff argues that the ALJ erred by failing to fully develop the record by either requesting additional information from Dr. Ashlock or by ordering a consultative examination from a gastroenterologist.  Plaintiff broadly asserts that the need for additional evidence is so clearly established that the ALJ was obliged to obtain more evidence as to his functional limitations.  [Dkt. 11, p. 4].  The undersigned finds that the record was adequately developed.

"[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability."  *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997)  However, the record contains no evidence to suggest that a consultative examination would have produced material information.

In this case there may be a question about the cause of Plaintiff's intermittent abdominal pain, however the focus of a disability determination is on the functional

---

[6] Plaintiff asserts that "[t]he ALJ rejected Dr. Ashlock's opinions because Plaintiff was no longer receiving interferon treatment so he could not, according to the ALJ, have abdominal pain when lifting heavy objects.(Tr. 22)." [Dkt. 11, p. 4].  The ALJ made no such statement, nor can the ALJ's decision be reasonably understood to contain any such assertion.

consequences of a condition, not the mere diagnosis. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment), *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work), *Scull v Apfel*, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).   The record contains sufficient information about Plaintiff's functional abilities to resolve the issue of disability.   Accordingly, the ALJ had no obligation to seek further information.   *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c), 404.1519a, 416.919a.  In addition, the ALJ's decision demonstrates he properly considered the information in the

record and that the decision is supported by substantial evidence.

## Alleged Illiteracy

Plaintiff argues that the ALJ failed to account for his inability to read due to dyslexia in the RFC.   On appeal Plaintiff argues that he is illiterate.   The undersigned notes that there is no indication anywhere in the medical record that Plaintiff cannot read or write. Plaintiff testified that he is unable to read a newspaper due to dyslexia, [R. 47], but he also testified that he completed the ninth grade, he can read some, [R. 48], he has a driver's license, and had to take a written test for that, [R. 49].   Further, it appears that Plaintiff completed disability paperwork.  [159-166, 199-206].  In the disability paperwork Plaintiff

does not state that he cannot read or write, just that he cannot do it well. [R. 164, 202, 204].

While the ALJ did not include any limitation for dyslexia in the RFC, the record reveals that the ALJ questioned the vocational expert about the effect of a poor ability to read on the jobs identified. [R. 73-74]. Thus, the ALJ satisfied himself that Plaintiff could perform the jobs with his reading limitation. Under these circumstances, the undersigned finds there is no need to remand the case for further consideration of Plaintiff's dyslexia. The Tenth Circuit has counseled that the court should exercise common sense and not insist on technical perfection. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Further, no principle of administrative law or common sense requires that a case be remanded in quest for a perfect opinion, unless there is reason to believe that the remand might lead to a different result. *See Moua v. Colvin,* 541 Fed. Appx. 794, 798 (10th Cir. 2013).

### Credibility Determination

"[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir.2010) (internal quotation marks omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted). In this case the ALJ gave numerous reasons supported by the evidence for the credibility finding. The ALJ noted Plaintiff stopped working not because he was unable to work but due to a business-related layoff, and there is no indication of a significant deterioration of his condition since he last worked. [R. 23]. The ALJ found Plaintiff's receipt of unemployment benefits which

9

required Plaintiff to certify he was able and available to perform work activity was inconsistent with his claim of disabling functional limitations and reflected negatively on his credibility.   *Id.*   In addition, the ALJ noted Plaintiff gave inconsistent statements to his medical providers concerning the need to use the restroom multiple times throughout the day and about the severity of his abdominal pain.   *Id.*

Plaintiff asserts that the ALJ unreasonably focused on his receipt of unemployment benefits as a negative credibility factor.   Plaintiff footnoted a number of cases from other circuits holding that receipt of unemployment benefits does not undermine credibility. However, in a recently issued unpublished decision, a panel of the Tenth Circuit affirmed the reliance on receipt of unemployment benefits as weighing against a claim of a completely disabling impairment.   In that case the Court stated:

> There is an obvious inconsistency between claiming an *ability* to work for purposes of obtaining unemployment compensation and claiming an *inability* to work for purposes of obtaining social security benefits.   The ALJ was thus entitled to rely on Pickup's receipt of unemployment benefits as a reason weighing against the credibility of her claim of a completely disabling impairment.

*Pickup v. Colvin*, 606 Fed. Appx. 430, 433 (10th Cir. 2015) (italics in original).   *See also Vigil v. Colvin*, 2015 WL 4902038 at * 2 (10th Cir. August 18, 2015)(same).   The undersigned finds no error in the ALJ's consideration of the receipt of unemployment benefits as a credibility factor.

Plaintiff also asserts that the ALJ should not have considered the fact that Plaintiff was laid off from his job as a negative credibility factor.   Plaintiff asserts that in this case that fact does not undermine credibility because the work was only three days a week and he testified that he spent the other four days recovering.   Actually, at the hearing it was

10

clarified that Plaintiff was working only 24 hours a week because that was all the business could afford to pay, only a few supervisors were working full-time, and the rest of the workforce worked part-time.  [R. 57].  It was also clarified that Plaintiff was not laid off because of his medical condition.   The undersigned finds no error in the ALJ's consideration of the reason Plaintiff left work as a credibility factor.

The ALJ stated he considered the third party function report from Plaintiff's wife, Darla Turner.  The ALJ noted that the statements made by Plaintiff's wife were not made under oath and appeared to be a repeated statement of Plaintiff's subjective complaints. [R. 21].  Plaintiff argues that the ALJ erred in rejecting Mrs. Turner's statement as there is no requirement that third party statements be given under oath.  Further Plaintiff asserts that the consistency of Mrs. Turner's statements with Plaintiff's testimony should be a positive credibility factor, rather than a negative one.

Plaintiff is correct that there is no requirement that third party statements be given under oath.  However that was not the only reason for the ALJ's rejection of Mrs. Turner's statement.  As the ALJ stated, it appears that Mrs. Turner merely repeated Plaintiff's subjective complaints.  *Compare* R. 159-166 *with* 189-196.  As previously discussed, the ALJ's finding about Plaintiff's credibility is supported by substantial evidence.  It is not inappropriate to reject a third party statement on the basis that it is largely cumulative of the claimant's testimony which was found to be incredible.  *See Brescia v. Astrue*, 287 Fed. Appx. 626, 630-631 (10th Cir. 2008) (ALJ's failure to discuss third party statements not ground for remand where statements were largely cumulative of the claimant's testimony). The undersigned find no error in the ALJ's treatment of Mrs. Turner's statement.

11

### Step Five Finding

At step five of the evaluative sequence, the ALJ determines whether Plaintiff is able to do work considering his RFC, age, education, and work experience.  The Commissioner is responsible for providing evidence that demonstrates work exists in significant numbers in the national economy that Plaintiff can perform.  20 C.F.R. §§ 404.1520(g), 416.920(g). Relying on the testimony of a vocational expert, the ALJ found that Plaintiff could perform sorting jobs, DOT # 7533587-101; laundry press jobs, DOT # 686.025-086; and hand packager jobs, DOT# 753.687-038.  [R. 25].

Plaintiff argues that the Commissioner failed to meet her burden in this case because the ALJ failed to inquire of the vocational expert whether her testimony was consistent with the Dictionary of Occupational Titles (DOT).  Although the ALJ did not inquire whether the vocational expert's testimony was consistent with the DOT, the vocational expert provided DOT numbers for each of the jobs identified.  In light of the thoroughness of the questioning of the vocational expert, the record demonstrates that the vocational expert's testimony was consistent with the DOT.  Again, technical perfection in decision writing is not necessary for the affirmance of a disability decision. *Keyes-Zachary,* 695 F.3d at 1166(10th Cir. 2012).

The undersigned finds that, contrary to Plaintiff's assertions, there is not, in fact, a discrepancy between the vocational expert's testimony and the DOT description for the jobs identified.  Plaintiff asserts that the vocational expert's testimony that there was not normally any need to read instruction in the jobs identified, [R. 73-74], is contrary to the DOT description for those jobs which all require reading at a language level one.

The DOT assigns each job a "language development level" from one to six, with six being the highest level requiring the most skill and accomplishment.   Language development levels address reading, writing, and speaking.   Language level one is the lowest level and requires:

> Reading:  Recognize meaning of 2,500 (two or three syllable) words.  Read at rate of 95-120 words per minute.  Compare similarities and differences between words and between series of numbers.
>
> Writing:  Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> Speaking:  Speak simple sentences, using normal work order, and present and past tenses.

DOT Appendix C–Components of the Definition Trailer; 1991 WL 688702.  Nothing in the DOT descriptions for the particular jobs identified specifies whether it is the reading, writing, or speaking aspect of the job or some combination that places it at language level one.

In a similar circumstance where the claimant's ability to reach overhead was limited, but the DOT required frequent reaching, in an unpublished decision a panel of the Tenth Circuit recognized that since the DOT reaching requirement addressed reaching in any direction, it was unclear what specific kind of reaching a job required.  The Court noted that even a job requiring frequent reaching would not necessarily require more than occasional overhead reaching.  The Court reasoned that where the vocational expert was aware of the claimant's limitations on overhead reaching, the vocational expert's testimony did not conflict with the DOT, but clarified how the broad classifications applied to the individual case.  *Segovia v. Astrue*, 226 Fed.Appx. 801, 804 (10th Cir. 2007).  In the present case, the ALJ specifically questioned the vocational expert about the need to read in each of the

jobs.  As in the *Segovia* case, the vocational expert's testimony clarified how the broad language development classification applied to the jobs.  The undersigned finds no error in the ALJ's reliance on the vocational expert's testimony.

Plaintiff notes that the jobs identified are assigned a reasoning level two which means that the worker is required to "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instruction."  DOT Appendix C.  Plaintiff stresses that written instructions may be involved and argues, therefore, that the jobs are beyond his ability.  There is no merit to Plaintiff's argument.  Reasoning level two specifies that job instructions may be either written or oral.  The vocational expert's testimony that the jobs do not require much reading does not conflict with a reasoning level two, but again clarifies how the classification applies to the jobs identified.

In the course of being questioned about the need to read instructions in the jobs identified, the vocational expert stated, "all these jobs actually could be done by just someone showing the person how."  [R. 74].  The ALJ followed up by interjecting, "Okay, by short demonstration."  The vocational expert agreed, "Right, short demonstration."  *Id.* The DOT assigns a specific vocational preparation (SVP) level to each job. SVP addresses the amount of time required by a typical worker to learn to perform a job.  The jobs identified have an SVP level 2.  SVP 2 is defined by the DOT as "[a]nything beyond short demonstration up to and including one month."  DOT Appendix C.  Plaintiff argues that an SVP 2 is contrary to the vocational expert's testimony about a short demonstration.  It is not.  The vocational expert's "short demonstration" comment did not address SVP (the length of time to learn a job).  Rather, the vocational expert was testifying about the manner in which the job was learned.  The clear meaning of the vocational expert's testimony is that

14

the jobs are learned by demonstration, rather than by written instruction.  The undersigned finds that the vocational expert's testimony on this topic is not contrary to the DOT.

Finally, Plaintiff argues that the ALJ erroneously relied on the vocational expert's identification of "various types of sorting jobs" as prohibited by *Social Security Ruling* (SSR) 82-61, 1982 WL 31387.  That SSR addresses findings related to past relevant work.  It does not deal with a step five finding.  The cases Plaintiff cited from the Central District of California are not discussed by Plaintiff in any meaningful way.  The undersigned declines to distinguish or address Plaintiff's citations to cases that are not authoritative.

### Conclusion

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before February 11, 2016.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

15

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 28th day of January, 2016.


*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE