UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KARL E. TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-0040-CVE-FHM |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner, Social ) | |
| Security Administration ) | |
| ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before this Court is the report and recommendation (Dkt. # 20) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the decision of the Commissioner of the Social Security Administration denying plaintiff Social Security disability benefits. Plaintiff has filed an objection (Dkt. # 21) to the report and recommendation and seeks reversal of the Commissioner's decision, arguing that the Administrative Law Judge (ALJ) committed several errors in evaluating plaintiff's claim. Defendant responds that the magistrate judge's report and recommendation should be accepted because the ALJ committed no error in considering plaintiff's claim. Dkt. # 22.

**I.**

On June 24, 2011 plaintiff protectively filed for Title XVI supplemental security income and, on September 26, 2011, plaintiff filed a Title II application for disability benefits.[1] Dkt. # 10, at 19.

---

[1] In the hearing before the ALJ, the ALJ noted that plaintiff's protective filing date for supplemental security income was before the date of his application for disability benefits and verified with plaintiff's attorney the dates of plaintiff's applications. Dkt. # 10, at 37. Plaintiff's attorney explained that the discrepancy in the dates related to the processing of the applications and that plaintiff submitted both applications on the same day. Id. at 37-38.

Plaintiff's applications stated that he suffered from various physical impairments that left him unable to work, including gastrointestinal issues, rectal bleeding, and severe fatigue. Id. at 171. Plaintiff's claims were denied initially on February 3, 2012 and upon reconsideration on June 4, 2012. Id. at 19. Plaintiff requested a hearing before the ALJ and that hearing was held on February 25, 2013. Id.

Plaintiff appeared at the hearing and was represented by an attorney. Id. at 34. Plaintiff was 48 years old on the alleged onset of disability date and 50 on the date of the ALJ's decision. Dkt. # 20, at 2. Plaintiff testified that he lived in a house with his wife and adult stepson. Dkt. # 10, at 48. Plaintiff stated that he has a ninth grade education and did not earn a GED. Id. at 50. He testified to a variety of physical complaints, including abdominal pain and cramps, frequent bowel movements, rectal bleeding, and an overall low energy level. Id. at 63, 65. Plaintiff testified that these ailments necessitated multiple naps a day and caused difficultly sleeping during the night. Id. at 67-68. Plaintiff explained that he had trouble sitting or standing for long periods of time and required frequent breaks from either position. Id. at 70-71. He also testified that he had trouble walking long distances due to stomach cramps and that he could not lift items weighing over five pounds because it would exacerbate his rectal bleeding. Id. at 72-73.

On April 9, 2013, the ALJ issued a written decision finding that plaintiff was not disabled. Id. at 28-29. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Id. at 21. The ALJ found that plaintiff had severe impairments affecting his ability to work, including hypertension, hemorrhoids, obesity, and hepatitis C. Id. The ALJ further found that these impairments or combination of impairments were not equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. at 22. The ALJ formulated plaintiff's

residual function capacity (RFC), taking into account the medical evidence and testimony. Id. The ALJ determined that plaintiff could perform work that required him to occasionally lift and carry up to 20 pounds and frequently lift and carry 10 pounds; stand and/or walk for 6 hours in an 8-hour work day; sit for about 6 hours in an 8-hour work day, and push and/or pull with the upper and lower extremities without limitation. Id.

After summarizing the evidence used to formulate plaintiff's RFC, the ALJ stated that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Id. at 24. The ALJ noted inconsistencies between plaintiff's statements regarding his symptoms and the objective medical evidence, specifically identifying the medical records that contradicted plaintiff's statements. Id. at 24-27. Considering plaintiff's RFC, the ALJ found that plaintiff was unable to perform any past relevant work as a metal mechanic/fabricator, but that he could perform other occupations existing in significant numbers in the national economy. Id. at 27. These occupations included sorting, laundry press, and hand packager positions. Id. at 28. The ALJ included these occupations based upon the testimony of a vocational expert (VE) who identified each position based on its Dictionary of Occupational Titles (DOT) identification number. Id. Based on these determinations, the ALJ concluded that "[plaintiff] is not disabled under sections 216(I) and 223(d)" or "section 1614(a)(3)(A) of the Social Security Act." Id. at 28-29.

On November 26, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Id. at 4. Plaintiff thereafter sought judicial review, arguing the ALJ's RFC was unsupported by substantial evidence, the ALJ's credibility determination was unsupported by

substantial evidence, and the Commissioner failed to sustain her burden at step five regarding plaintiff's ability to perform other work existing in significant numbers in the national economy. Dkt. # 11, at 2. The Court referred the case to the magistrate judge, who entered a report and recommendation recommending that the Court affirm the ALJ's decision. Dkt. # 20. Plaintiff has objected to the report and recommendation, asserting that the magistrate judge erred in concluding: (1) that the ALJ's decision was supported by substantial evidence in the form of medical opinions offered by non-treating consultants; (2) that the ALJ properly developed the record regarding plaintiff's gastrointestinal issues; (3) that the ALJ's failure to account for plaintiff's inability to read in formulating plaintiff's RFC was not in error; (4) that the ALJ properly assessed plaintiff's credibility; and (5) that the ALJ did not err in his finding at step five. Dkt. # 21. Defendant responds that the magistrate judge correctly reviewed the ALJ's decision and affirmance is appropriate. Dkt. # 22.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation.[2] Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d

---

[2] In addition to plaintiff's objection to the magistrate judge's report and recommendation, plaintiff also filed what purports to be a reply to defendant's response to plaintiff's objection (Dkt. # 23). In considering objections to a magistrate judge's report and recommendation, the Court considers only the objection and the non-objecting party's response thereto. See FED. R. CIV. P. 72(b)(2) (allowing a party to object to a magistrate judge's report and recommendation within fourteen days of service and allowing the non-objecting party to respond to objection within fourteen days of service). As such, the Court does not consider plaintiff's reply to defendant's response in this opinion and order.

573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

### III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five-step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214

(10th Cir. 2004). The court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The ALJ decided the case at step five of the analysis, concluding that plaintiff could perform other work existing in significant numbers in the national economy. Dkt. # 10, at 27. Having so decided, the ALJ found plaintiff not disabled and denied his application for benefits. Id. at 28-29. The magistrate judge recommended affirming the ALJ's decision, concluding that the ALJ properly assessed plaintiff's claim. Dkt. # 20, at 15. The magistrate judge concluded that the ALJ's formulation of plaintiff's RFC was supported by substantial evidence, including the ALJ's decision to give great weight to medical opinions from medical consultants who reviewed plaintiff's records, that the ALJ properly developed the record in assessing plaintiff's gastrointestinal issues, and that the ALJ properly accounted for plaintiff's reading limitations in his formulation of plaintiff's RFC. Id. at 5, 7-9. The magistrate also concluded that the ALJ did not err in his credibility assessment of plaintiff and that the Commissioner met her burden at step five even though the ALJ did not inquire of the VE whether his testimony was consistent with the DOT. Id. at 11-12. Plaintiff has filed an objection to the magistrate judge's report and recommendation arguing that the ALJ's decision contains numerous errors requiring reversal. Dkt. # 21. Defendant responds that the ALJ correctly assessed plaintiff's claim and seeks affirmance. Dkt. # 22. The Court considers each of plaintiff's allegations of error in turn.

**A.**

Plaintiff first argues that medical opinions offered by non-examining and non-treating agency consultants concluding that plaintiff could perform light work cannot be considered substantial

evidence supporting the ALJ's decision because the consultants issued these opinions without a review of the entire record.  Dkt. # 21, at 1.  Plaintiff asserts that later records demonstrate the severity of his gastrointestinal condition, including evidence of worsened bleeding, increased bowel movements, and pain and cramping; thus, the ALJ's reliance on medical opinions not based on the entire record in formulating plaintiff's RFC is in error.  Id.  Defendant responds that the ALJ did not err in giving this evidence great weight because the ALJ considered the entire record and specifically noted that the medical opinions were consistent with the entire record.  Dkt. # 22, at 2.

The ALJ considered all of the medical evidence in the record before concluding that plaintiff could perform light work.  Dkt. # 10, at 24-27.  This included medical opinions from the non-examining consultants that the ALJ concluded supported the determination that plaintiff was capable of performing light work.  Id. at 26-27.  But the ALJ also relied on other evidence, specifically identifying medical records from the period after the state consultants issued their opinions.  See id. at 24-26.  The ALJ discussed these records in detail, discussing the severity of the symptoms as they were reflected in the medical records and identifying specific complaints of plaintiff that the ALJ believed overstated the nature of plaintiff's symptoms.  Id.  And, in deciding to give the opinions of the state consultants great weight, the ALJ specifically noted that state consultants opinions were consistent with the medical records from the later period.  Id. at 27.

To the extent that plaintiff argues that the ALJ's reliance on these medical opinions caused the ALJ to rely on his own medical expertise in interpreting the later records about plaintiff's condition, this argument is unpersuasive.  The ALJ, not a physician,  determines a plaintiff's RFC based on the medical records.  See Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").  The

7

ALJ considered the record as a whole before concluding that plaintiff was capable of performing light work. And plaintiff's argument that the ALJ erred in relying on the medical opinion of a doctor who was no longer a practicing physician is also unpersuasive. The magistrate judge dismissed this argument, noting that plaintiff mentioned that one of the physicians who reviewed plaintiff's medical records was no longer a practicing physician, but concluded such an argument had no effect on the merits of the physician's opinion. Dkt. # 20, at 5 n.5. As plaintiff provides no authority supporting his argument that the medical opinion should not be considered when it comes from a physician who is no longer practicing, the Court agrees with the magistrate judge's assessment.

In sum, substantial evidence supports the ALJ's conclusion regarding plaintiff's RFC based, in part, upon the medical opinions of non-examining and non-treating state agents. The ALJ did not err in giving great weight to these medical opinions.

**B.**

Plaintiff next asserts that the ALJ failed to adequately develop the record by either ordering a consultative examination by a gastroenterologist or requesting additional information from plaintiff's treating physician. Dkt. # 21, at 2. Plaintiff explains that he needed to see a gastroenterologist but could not afford such a visit, nor could he afford additional tests or medications. Id. He argues that, without such further tests and examination, the ALJ did not have a sufficient record upon which to base his conclusions regarding plaintiff's intestinal issues. Id. Defendant responds that the ALJ adequately developed the record. Dkt. # 22, at 2-4.

An "ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." Hawkins

v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997). Here, a consultative exam is unnecessary because additional testing or diagnoses would not be of material assistance in resolving the issue of disability. The ALJ considered the functional limitations that plaintiff's gastrointestinal issues caused rather than specific diagnoses. Dkt. # 10, at 25. The ALJ made this determination based upon his consideration of evidence already in the record, rendering a consultative exam unnecessary. See id. (discussing plaintiff's abdominal plain and rectal bleeding). As the magistrate judge noted, "there may be a question about the cause of Plaintiff's intermittent abdominal pain[;] however the focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis." Dkt. # 20, at 7-8; see also Madrid v. Astrue, 243 F. App'x 387, 392 (10th Cir. 2007) (unpublished)[3] ("Our case law makes clear that a diagnosis of a condition does not establish disability. The question is whether a person's impairment significantly limits his ability to engage in substantial gainful activity."). Because other evidence in the record allowed the ALJ to determine what functional limitations plaintiff's abdominal pain caused, his decision not to request a consultative exam to determine the cause of plaintiff's condition was not in error.

## C.

Plaintiff next argues that the ALJ failed to account for plaintiff's illiteracy in his formulation of plaintiff's RFC. Dkt. # 21, at 4. Plaintiff asserts that he testified he could not read due to his dyslexia, which the ALJ should have understood as rendering him essentially illiterate. Id. Plaintiff argues that the ALJ's failure to include plaintiff's illiteracy in the RFC is a reversible error. Id. at 4-5. Defendant responds that the ALJ's formulation of plaintiff's RFC accounted for any limitations

---

[3] This and other unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

9

plaintiff experienced due to his reading difficulties, but that plaintiff is not illiterate. Dkt. # 22, at 6.

Although plaintiff argues that he is essentially illiterate due to his dyslexia, the record is replete with evidence that, while plaintiff may experience difficulty reading, he is not illiterate. Plaintiff testified that he completed the ninth grade and that he could read some, limited to a couple of lines at a time. Dkt. # 10, at 50-51. He also testified that he has a driver's license, for which he had to take a written test. Id. at 52. Plaintiff also appears to have completed disability paperwork himself in which he stated only that he cannot read or write well, not that he is illiterate. See id. at 162-69.

And, in the ALJ's questioning of the VE, he considered whether plaintiff's difficulty in reading would be a hindrance to the occupations that the VE identified as potential employment opportunities. Id. at 76-77. The ALJ questioned the need for reading instructions in the positions the VE identified, and asked the VE whether a demonstration could be utilized to instruct plaintiff for positions that would require reading basic instructions. Id. Plaintiff's attorney also questioned the VE regarding the requisite reading for positions he identified, and the VE responded that he believed a person with a ninth grade education who could read only a couple of lines at a time would be able to perform these jobs. Id. at 81-83. As these were the jobs the ALJ ultimately identified in his written decision, it is apparent that the ALJ took into account plaintiff's reading limitations when considering other occupations. See id. at 28.

The only evidence of plaintiff's alleged illiteracy is his testimony that he cannot read a newspaper due to his dyslexia. See id. at 50. This alone, in the face of the evidence to the contrary, is insufficient to support a finding that plaintiff is illiterate. And, in considering other occupations

that plaintiff could perform, the ALJ considered whether plaintiff's dyslexia would impact his ability to perform these jobs. Because substantial evidence supports the ALJ's determination regarding plaintiff's dyslexia, the ALJ did not err in failing to include plaintiff's alleged illiteracy in his formulation of plaintiff's RFC.

### D.

Plaintiff also argues that the ALJ erred in his credibility determination, asserting that the ALJ improperly relied upon plaintiff's receipt of unemployment benefits in assessing plaintiff's credibility. Dkt. # 21, at 5. Defendant responds that the ALJ's credibility determination should be upheld. Dkt. # 22, at 5. "Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence." Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hutson, 838 F.2d at 1132. An ALJ must look beyond objective medical evidence in evaluating claims of disabling pain. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987). An ALJ must give specific reasons for his findings and such findings must be closely linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995). However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence"; an ALJ needs only to "set[] forth the specific

evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

In concluding that plaintiff was not credible, the ALJ first summarized plaintiff's testimony before addressing specific objective medical evidence that contradicted plaintiff's testimony. Dkt. # 10, at 23-27. The ALJ specifically noted that unemployment benefits that plaintiff received undermined plaintiff's credibility because, to receive unemployment benefits, a person must certify that he is able and available to perform work. Id. at 26. The ALJ noted that this was inconsistent with plaintiff's claims that his impairments created functional limitations. Id. In addition to the ALJ's discussion of unemployment benefits that plaintiff received, the ALJ detailed other reasons for concluding that plaintiff was not credible, including evidence that plaintiff stopped working because of a business-related layoff rather than disabling impairments and medical records that demonstrated plaintiff did not suffer from limitations in his daily activities to the extent that he testified. Id.

Plaintiff's argument regarding the magistrate judge's credibility determination centers on plaintiff's claim that the magistrate judge placed undue significance on plaintiff's receipt of unemployment benefits, which plaintiff asserts is an impermissible credibility factor. Dkt. # 21, at 5. But an ALJ may consider a plaintiff's receipt of unemployment benefits as a credibility factor when reciept of such benefits is inconsistent with a plaintiff's claims of disabling symptoms rendering him unable to work. See, e.g., Pickup v. Colvin, 606 F. App'x 430, 433 (10th Cir. 2015) (unpublished) (finding that ALJ did not err in considering plaintiff's receipt of unemployment

benefits as a credibility factor because "[t]here is an obvious inconsistency between claiming an *ability* to work for purposes of obtaining unemployment compensation and claiming an *inability* to work for purposes of obtaining social security benefits") Vigil v. Colvin, 623 F. App'x. 936, 938 (10th Cir. 2015) (unpublished) (finding plaintiff's claims of disabling pain incredible when plaintiff collected unemployment benefits and sought other employment during relevant time period); Lately v. Colvin, 560 F. App'x 751, 755 (10th Cir. 2015) (unpublished) (upholding ALJ's credibility determination based, in part, on plaintiff's collection of unemployment benefits during period in which she claimed she experienced disabling impairments).[4]

Plaintiff's receipt of unemployment benefits is inconsistent with his claims of disabling pain because receipt of benefits required him to certify that he was able and available to work. The ALJ did not err in considering this inconsistency in making his credibility determination. And, as noted above, the ALJ relied on more in the record than plaintiff's collection of unemployment benefits in determining that he was not credible, identifying specific inconsistencies between plaintiff's medical records, employment history, and testimony at the hearing. The ALJ's credibility assessment of plaintiff is closely and affirmatively linked to the substantial evidence. As such, he did not error in concluding that plaintiff was not credible.

---

[4]  Plaintiff asserts that the magistrate judge cited only unpublished decisions in concluding that the ALJ properly considered plaintiff's collection of unemployment benefits as a credibility factor. Dkt. # 21, at 5. Although unpublished cases may be used for their persuasive value only, the persuasive value is significant when numerous cases address the same issue and reach the same conclusion.

**E.**

Plaintiff finally argues that the ALJ erred in its finding at step five because the ALJ failed to inquire of the VE whether his testimony was consistent with the DOT, as the legal standard requires, and asserts and the VE's testimony about certain occupations conflicted with the DOT descriptions regarding reading requirements. Dkt. # 21, at 6. Defendant responds the ALJ did not err because the ALJ's thorough questioning elicited responses demonstrating that the VE's testimony was consistent with the DOT and technical perfection with the legal standards in an ALJ's decision is not required. Dkt. # 22, at 7.

In considering the testimony of a VE, the ALJ must ask the VE how his testimony corresponds with the DOT and obtain a reasonable explanation for any discrepancy between the VE's testimony and the DOT. Hackett v. Barnhart, 395 F.3d 1168, 1175 (10th Cir. 2005) (citing Haddock v. Apfel, 196 F.3d 1084 (10th Cir. 1999)). Although the ALJ did not specifically ask the VE whether his testimony was consistent with the DOT when the VE testified regarding potential occupations plaintiff could perform, the VE provided DOT identifying numbers for each of the occupations he discussed. Dkt. # 10, at 75-81. This is strong evidence that the VE's testimony was consistent with the DOT. Further, the ALJ asked the VE specific questions regarding consistency with the DOT, including questions about the exertion and reasoning levels of each potential occupation. See id.

Plaintiff argues that the VE's testimony was inconsistent with DOT descriptions as it related to the reading requirements for specific occupations, but the Court finds this argument unpersuasive. Plaintiff argues that the VE's testimony, explaining that the ability to read instructions was generally not a part of the discussed occupations, conflicts with the DOT descriptions for those jobs that

14

require reading at language level one. Dkt. # 21, at 6. As the magistrate judge explained, language level one is the lowest level in DOT descriptions and is based upon a combination of reading, writing, and speaking. See Dkt. # 20, at 13 (citing DOT Appendix C - Components of the Definition Trailer). And, as the magistrate judge aptly noted, the descriptions for the occupations at issue do not identify "whether it is the reading, writing, or speaking aspect of the job or some combination that places it at language level one." Id. Thus, nothing in the DOT descriptions conflicts with the VE's testimony regarding the requisite reading for potential occupations.

The magistrate judge concluded that "[i]n light of the thoroughness of the questioning of the vocational expert, the record demonstrates that the vocational expert's testimony was consistent with the DOT." Id. at 12. The Court agrees with the magistrate judge's assessment. The record sufficiently demonstrates that the VE's testimony was consistent with the DOT, even if the ALJ's opinion does not perfectly comport with the standards for evaluating a VE's testimony. See Keyes-Zachary, 695 F.3d at 1166 (explaining that technical perfection is not required in an ALJ's decision). As such, there is no reversible error at step five regarding the VE's consistency with the DOT.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 20) is **accepted**. The Commissioner's decision to deny plaintiff's claim for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 22nd day of March, 2016.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE